## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **DANTE MELENDEZ, and DESTINY MORRISON, individually and on behalf of all others similarly situated,** | |
| *Plaintiffs*, | |
| **v.** | Case No.: _____ |
| **GENERAL MILLS, INC.,** | |
| *Defendant*. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Dante Melendez and Destiny Morrison ("Plaintiffs") bring this Class Action Complaint against Defendant, General Mills, Inc., ("Defendant") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this class action lawsuit on behalf of themselves, and all others similarly situated who purchased all sizes of chocolate flavored Cocoa Puffs cereal, Cocoa Puffs Treat Cereal Bars, Cocoa Puffs Soft Bake Oat Bars, Cocoa Puffs Brownie Crunch Cereal & Cocoa Puffs Minis Cereal (the Products).

2. Unfortunately, the Products are unfit for their intended consumption because they contain high levels of lead.

3.      The Products are formulated, designed, manufactured, advertised, sold, and distributed by Defendant or its agents to consumers, including Plaintiffs, across the United States.

4.      Defendant's marketing and advertisement specifically targets children.

5.      The Center for Disease Control has said in the past that "Scientific evidence suggests that there is no known safe blood lead level, because even small amounts of lead can be harmful to a child's developing brain".[1]

6.      Each of the products was manufactured by Defendant, distributed to other corporations, and then sold to consumers across the United States.

7.      Through marketing and sale, Defendant represented that the Products are safe and effective for people, especially children, to consume.

8.      Other manufacturers formulate, produce, and sell non- poisonous chocolate cereal and bars, which is evidence that this poisoning risk inherent with Defendant's Products is demonstrably avoidable.

9.      Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

10.     At the time of their purchases, Defendant didn't notify Plaintiffs, and similarly situated consumers, of the Product's risk of lead poisoning through the product labels, instructions, ingredients list, other packaging, advertising, or in any other manner, in violation of the state and federal law.

---

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8553025/ (last accessed on July 25, 2024)

2

11.    Plaintiffs purchased the Products, while lacking the knowledge that the Products could poison those who consumed them, thus causing serious harm to those who use such Products.

12.    Because Plaintiffs were injured by the Products and all consumers purchased the worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

13.    As a result of the above losses, Plaintiffs seek damages and equitable remedies.

## PARTIES

14.    Plaintiff Dante Melendez is a resident and citizen of Louisville, Kentucky.

15.    Plaintiff Destiny Morrison is a resident and citizen of Ravanel, South Carolina.

16.    Defendant is as Minnesota based corporation with its principal place of business in Minneapolis, Minnesota that specializes in the manufacture and marketing of processed foods sold in retail food chains in the United States.

17.    Defendant is also one of the lead cereal producers in the United States and produces some of the world's most successfully selling brands of cereal such as Cheerios, Trix, Lucky Charms, Reeses Puffs, Cinnamon Toast Crunch, and most importantly, Cocoa Puffs.

18.    Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products, and the claims alleged herein was primarily carried out at Defendant's headquarters and facilities within Minneapolis, Minnesota.

## JURISDICTION AND VENUE

19.    This Cort has subject matter jurisdiction over this matter under 28 U.S.C. §1332(d), as modified by the Class Action Fairness Act of 2005, because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest

and costs, and (iii) there is minimal diversity because Plaintiffs and Defendant are citizens of different states.

20.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21.    This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the laws, rights, and benefits of the State of Minnesota. Defendants are incorporated in Minnesota and engaged in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout this forum (ii) conducting substantial business in this forum; and/or (iii) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in Minnesota and in this judicial District.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(1) because substantial part of the events giving rise to this action occurred in this District. Moreover, Defendants are based in this District.

## FACTUAL ALLEGATIONS

23.    Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

24.    The US Food & Drugs Administration has established that Lead may be present in food from the environment where foods are grown, raised, or processed. Levels of lead in the environment can vary depending on natural geographical makeup and proximity to current or past use or manufacturing of products made with lead.[2]

---

[2] https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=Lead%20may%20be%20present%20in,of%20products%20made%20with%20lead. (last accessed on July 25, 2024)

25.     Because there is no known safe level of exposure to lead, the FDA monitors and regulates levels of lead in foods.[3]

26.     By law, food manufacturers have a responsibility to significantly minimize or prevent chemical hazards when needed.

27.     The Center for Disease Control has said in the past that there is no safe level of lead for children.[4]

28.     Defendant is a well – established corporation known for the manufacture and marketing of processed foods sold in the United States.

**The Products**

29.     The Products at hand are chocolate cereals and bars made for the consumption of children and adults but is specially targeted as a safe product to be consumed by children.

30.     Unfortunately, the Products have a risk of poisoning due to the products containing lead.

31.     In more detail, these Products are chocolate cereals and bars, as seen below:

**(Space left Intentionally in Blank)**

---

[3] Id.
[4] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8553025/ (last accessed on July 25, 2024)



**Cocoa Puffs Cereal**



**Cocoa Puffs Cereal Bar**



**Cocoa Puffs Soft Baked Oat Bars**



**Cocoa Puffs Brownie Crunch Cereal**



**Cocoa Puffs Minis Cereal**

### Defendant's Misrepresentations and Omissions are Actionable

32.     Plaintiffs bargained for Chocolate cereals and/or bars that were safe to consume. Defendant's Products were, and still are, unsafe due to the risk of poisoning because of the level of lead that can be found in them.

33.     Defendants promote the products as a "cereal that the whole family will love. No high fructose corn syrup, colors from artificial sources, or artificial flavors. At least 10 grams of whole grain per serving. Good source of calcium and vitamin D."[5]

34.     Nowhere in the webpage or the Products packaging did Defendant disclose that the products could poison the consumer.

35.     No reasonable consumer would expect the Products, a chocolate cereal and/or bar, to contain lead. Accordingly, Plaintiffs and Class Members were injured as a result of purchasing

---

[5] https://www.generalmills.com/food-we-make/brands/cocoa-puffs (last accessed on July 25, 2024).

the Products, including, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant; and they were deprived of the benefit of their bargain; and they spent money on a product that did not have any value or had less value than warranted or that they would not have purchased and consumed had they known the truth about the products.

36.     Additionally, because the facts concern a safety-related deficiency in the Product, Defendant was under a continuous duty to disclose to Plaintiffs and the members of the Classes the true nature of the Product and to disclose the Product contained a substance known to cause poisoning.  Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product.

37.     Plaintiffs seek to recover damages because the Products are adulterated, worthless, and unfit for safe human use due to the lead contained within the Products.

38.     Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of poisoning affecting the Products.

## **PLAINTIFFS' FACTUAL ALLEGATIONS**

39.     Plaintiff Dante Melendez bought Cocoa Puffs Cereal for personal household use, near his residence in Louisville, Kentucky.

40.     Plaintiff Destiny Morrison bought Cocoa Puffs Cereal for personal household use near his residence in Ravenel, South Carolina.

41.     Nowhere on the Product's packaging or webpage did Defendant disclose that the Products could present a risk of lead poisoning.

42.    If Plaintiffs had been aware of the risk of lead poisoning in the Products, they would not have purchased the Products, or would have paid significantly less.

43.    As a result of Defendant's actions, Plaintiffs have incurred damages.

44.    If the Products and packaging were reformulated to be safe and avoid risk of lead poisoning, Plaintiffs would consider purchasing the Products again in the future.

## CLASS ACTION ALLEGATIONS

45.    Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and or 23(c)(4), individually, and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased all sizes of chocolate flavored Cocoa Puffs cereal, Cocoa Puffs Treat Cereal Bars, Cocoa Puffs Soft Bake Oat Bars, Cocoa Puffs Brownie Crunch Cereal & Cocoa Puffs Minis Cereal within the applicable statute of limitations.

**Kentucky Subclass:** All persons within Kentucky who purchased all sizes of chocolate flavored Cocoa Puffs cereal, Cocoa Puffs Treat Cereal Bars, Cocoa Puffs Soft Bake Oat Bars, Cocoa Puffs Brownie Crunch Cereal & Cocoa Puffs Minis Cereal within the applicable statute of limitations.

**South Carolina Subclass:** All persons within South Carolina who purchased all sizes of chocolate flavored Cocoa Puffs cereal, Cocoa Puffs Treat Cereal Bars, Cocoa Puffs Soft Bake Oat Bars, Cocoa Puffs Brownie Crunch Cereal & Cocoa Puffs Minis Cereal within the applicable statute of limitations.

46.    The Nationwide Class, Kentucky Subclass and South Carolina Subclass shall collectively be referred to herein as the "Classes."

47.    Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

48.    Excluded from the Classes are governmental entities, Defendant, its officers, directors, affiliates, legal representatives, and employees.

49.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

50.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

51.    **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

    a.  whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed by Defendant's Products;

    b.  whether Defendant made representations regarding the safety of the Products;

    c.  whether Defendant omitted material information regarding the safety of the Products;

    d.  whether Defendant's Products were merchantable;

    e.  whether Defendant violated the consumer protection statutes invoked herein;

    f.  whether Defendant's conduct alleged herein was fraudulent; and

    g.  whether Defendant was unjustly enriched by sales of the Products.

52.   The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiffs' claims.

53.   **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of those of the Classes in that the Class members uniformly purchased Defendant's Products and were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

54.   **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

55.   **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because they are members of the Classes, and their interests do not conflict with the interests of the Classes that they seek to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and undersigned counsel.

56.   **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm

described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

57.     **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members as described below, with respect to the members of the Classes as a whole. In particular, Plaintiffs seek to certify Classes to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended

58.     Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

b.  The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical

matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.   Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
**Unjust Enrichment**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

59.   Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

60.   Plaintiffs, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products. These monies were no gifts or donations but were given in exchange for the Products.

61.   Defendant voluntarily accepted and retained these benefits.

62.   Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Products unfit for human consumption, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

63.   Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs, and the other members of the Classes, because Plaintiffs, and members of the Classes, purchased mislabeled products that were not what Plaintiffs and the Classes bargained for and were not safe and effective, as claimed.

64.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs, and members of the Classes, because they would have not purchased the Products had they known the true facts.

65.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

### COUNT II
**Breach of Express Warranty**
**On behalf of the Nationwide Class and, alternatively, the Subclass)**

66.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.     Plaintiffs, and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

68.     The terms of the contract include the promises and affirmations of fact, that the products were safe to consume, made by Defendant on the Products' packaging and through marketing and advertising.

69.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendant.

70.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe to consume, particularly for children.

71.     Plaintiffs and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

72.     Defendant breached express warranties relating to the Products and their qualities because Defendant's Product possessed the capability to poison the consumers at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

73.     Plaintiffs and each of the members of the Classes would not have purchased the Products had they known the true nature of the risk of the Product poisoning those who consumed the Products.

74.     As a result of Defendant's breach of warranty, Plaintiffs and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### COUNT III
**Breach of Implied Warranty
On behalf of the Nationwide Class and, alternatively, the Subclass)**

75.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.     Defendant is engaged in the business of designing, manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

77.    The Products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

78.    The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which chocolate cereals and/or bars are consumed and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiffs and the Class Members.

79.    Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably safe for consumption cereals and/or bars, particularly for children, because the Products have a risk of poisoning the consumer. Therefore, the Products are not fit for their particular purpose.

80.    Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiffs and Class Members.

81.    However, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

82.    Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

83.     Had Plaintiffs, Class Members, and the consuming public known that the Products could poison them and cause harm, they would not have purchased the Products or would have paid less for them.

84.     As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT IV**
**Breach of Implied Warranty of Merchantability**
**On behalf of the Nationwide Class and, alternatively, the Subclass)**

85.     Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

86.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Classes.

87.     There was a sale of goods from Defendant to Plaintiffs and the Classes.

88.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiffs and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiffs and the Classes to consume. Contrary to these representations and warranties, the Products were not fit for their ordinary consumption, and did not conform to Defendant's affirmations of fact and promises included with the packaging.

89.     Defendant breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiffs and the Classes a product that Defendant knew would expose Plaintiffs and the Classes to health risks, thus meaning Defendant knew that the Products were not fit for their intended consumption as safe to consume chocolate cereals and/or bars.

90. Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by risk of lead poisoning that can result from the consumption of their Products.

91. Plaintiffs and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

92. Plaintiffs and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

93. The Products were not altered by Plaintiffs or the members of the Classes.

94. Plaintiffs and members of the Classes consumed the Products in the ordinary manner in which such chocolate cereals and/or bars were intended to be consumed.

95. The Products were defective when they left the exclusive control of Defendant.

96. The Products were defectively designed and/or manufactured and unfit for their intended purpose as safe to consume chocolate cereals and/or bars, and Plaintiffs and members of the Classes did not receive the goods that they bargained for.

97. Plaintiffs and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

98. As a result of the defect in the Products, Plaintiffs and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

99. Defendant breached the implied warranty of merchantability to the Plaintiffs and Class members.

100.   Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

101.   Plaintiffs and Class members have been damaged by Defendant's breach of the implied warranties.

102.   Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relied, as well as costs and attorneys' fees, available under law.

## COUNT V
### Fraudulent Concealment
### (On behalf of the Nationwide Class and, alternatively, the Subclass)

103.   Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.   Defendant aimed to portray the Product as safe for frequent and repeated consumption and omitted key facts concerning the potential harm from prolonged consumption of lead, a component found in the Product.

105.   Defendant, acting through its representatives or agents, delivered the Product to its distributors and through other channels to consumers, including the Plaintiffs and Class Members.

106.   Defendant, as the owner, manufacturer, marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Product. Defendant owed Plaintiffs and Class Members a duty to disclose because the risks associated with lead containing products were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would

be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose that the Products contained a substance known to have adverse health effects.

107. Defendant willfully and knowingly omitted material information regarding the quality and safety of the Product as discussed herein. Defendant countenanced these material omissions to boost or maintain sales of the Product, and to create a false assurance that prolonged loyalty to Defendant's brand—the continued consumption of the Product—would not place consumers in danger. The omitted information and partial representations were material to consumers because they play a significant role in determining the value of the Product at the time of purchase.

108. During this time, Plaintiffs, and members of the Classes, were using the Products without knowing the Products could poison the consumers due to the lead found in them.

109. Defendant failed to discharge its duty to disclose these materials facts.

110. Although Defendant had a duty to ensure the accuracy of the information regarding the Products because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

111. Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done

to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiffs and Class Members, away from purchasing a competitor's product.

112. Plaintiffs and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of lead poisoning.

113. As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiffs, and the Classes, suffered damages in the amount of monies paid for the defective Products.

114. Plaintiffs and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiffs and the Class Members paid for the Product, awards medical monitoring expenses, costs, interest and attorneys' fees.

## COUNT VI
## Strict Liability- Failure to Warn

### (On behalf of the Nationwide Class and, alternatively, the Subclass)

115. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

116. Defendant had a duty to warn Plaintiffs and the Class members regarding the Defect, that being risk of poisoning due to lead, with the Products.

117. Defendant, which is engaged in the business of selling, manufacturing and supplying the Products placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Products.

118. The Products supplied to Plaintiffs and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and they reached

the consumer of the Product, including Plaintiffs and Class Members, without substantial alteration in the condition in which they were sold.

119. Defendant was in a superior position to know of the Defect, yet as outlined above, chose to do nothing when the defect became known to them.

120. Defendant failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

121. Defendant had information regarding the true risks but failed to warn Plaintiffs and members of the Classes to strengthen their warnings.

122. Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

123. Plaintiffs and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

124. This Defect proximately caused Plaintiffs' and Class members' damages.

125. The Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII
### Strict Liability- Design and Formulation Defect
### (On behalf of the Nationwide Class and, alternatively, the Subclass)

126. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

127. The design and formulation of the Products was defective and unreasonably dangerous.

128. The risk of lead poisoning contained within the Products creates unreasonable danger.

129. The design and formulation of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

130. The risk of lead poisoning contained within the Products outweighed the benefits and rendered the Products unreasonably dangerous.

131. Defendant's Product was defective because the design and formulation of the Products included lead.  After Defendant knew or should have known of the risk of injury from the lead found in the Products, Defendant continued to promote the Products as safe and effective to the Plaintiffs, Class Members, and public.

132. There are other Products and other similar chocolate cereals and/or bars that do not pose the risk of lead poisoning, meaning that there were other means of production available to Defendant.

133. The Products were unreasonably unsafe, and the Products should not have been sold in the market.

134. The Products did not perform as an ordinary consumer would expect.

135. The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

136. Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT VIII**
**Negligent Failure to Warn**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

137.  Plaintiffs incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

138.  Defendant owed Plaintiffs and Class members a duty of care and to warn of any risks associated with the Products.

139.  Defendant knew or should have known of the defect but failed to warn Plaintiffs and members of the Classes.

140.  Plaintiffs had no way of knowing of the Product's latent defect.

141.  Defendant's failure to warn caused Plaintiffs and Class members economic damages and injuries in the form of lost value due to risk lead poisoning.

142.  Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT IX**
**Negligent Design & Formulation Defect**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

143.  Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

144.  Defendant owed Plaintiffs and the Classes a duty to design and formulate the Products in a reasonable manner.

145. The design and formulation of the Products was defective and unreasonably dangerous, causing exposure to a material with harmful effects. Thus, the Products are now worthless.

146. The design and formulation of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

147. There are other chocolate cereals or/and bars that do not poison the consumers.

148. The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

149. The Defendant's negligent design/formulation of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

150. Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT X**
**Negligence**
**(On behalf of the Nationwide Class and, alternatively, the Subclass)**

151. Plaintiffs incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

152. Defendant owed a duty to consumers to produce a product that was safe for its intended consumption.

153. Defendant breached this duty by producing a product that was dangerous for its intended consumption. Defendant knew or should have known that chocolate cereals and/or bars

containing lead would cause injuries once exposed to humans and thus be worthless as a safe-to-consume cereals and or bars.

154.  As a direct result of this breach, Plaintiffs suffered injury in that Plaintiff has been deprived of their benefit of the bargain. Plaintiffs' injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiffs would not have been injured.

155.  Further, Plaintiffs' injuries were proximately caused by Defendant's breach. It is foreseeable that poorly designed and formulated chocolate cereals and/or bars containing lead would cause injury, and it is foreseeable that a user would lose their benefit of the bargain if they purchased dangerous chocolate cereals and/or bars.

156.  Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes, alleged herein, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

a.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and Plaintiffs' attorney as Class Counsel;

b.  For an order declaring the Defendant's conduct violates the causes of action referenced herein;

c.  For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

i.  Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: July 29, 2024

Respectfully submitted,

*/s/ Chad Alexander*
Chad Alexander, Esq.
**SIEBEN POLK**
Eagan Woods Office Center
2600 Eagan Woods Drive, Suite 50 Eagan, MN 55121-1170
Tel: (651)-437-3148
Email: CAlexander@siebenpolklaw.com
cjohnson@siebenpolklaw.com

-AND-

Paul J. Doolittle, Esq. *(Pro Hav Vice Pending)*
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street Charleston, SC 29403
Tel: (803) 222-2222
Email: pauldoolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiffs*

28